UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RODNEY VAN DUNK,

Plaintiff,

- against -

**OPINION AND ORDER**

PETER BROWER, MARK EMMA and ROBERT
LANCIA,

11 Civ. 4564 (ER)

Defendants.

Ramos, D.J.:

This case arises from a series of conflicts going back many years between Hillburn, New

York resident Rodney Van Dunk ("Van Dunk" or the "Plaintiff") and the Town of Ramapo

Police Department ("Ramapo P.D."). Over the past two decades, Plaintiff estimates that he has

filed approximately thirty civilian complaints against at least nineteen Ramapo P.D. officers—

including Peter Brower, Mark Emma and Robert Lancia (collectively, "Defendants")—based

upon what he characterizes as their consistently impolitic demeanor and racially selective

enforcement of the law against the Lunaape Ramapough Nation, of which he is a member. Pl.

Br. Opp. S.J. ("Pl. Opp.") at 2-3, Doc. 23; Defs.' R. 56.1 Stmt., Ex. H (Van Dunk Dep. 24:6 –

24:8), Doc. 17. Defendants contend that all of Plaintiff's complaints have been deemed

meritless. Defs.' R. 56.1 Stmt. ¶ 38, Doc. 17.

The particular kerfuffle that gave rise to the instant litigation occurred on the evening of

November 13, 2009, when, during a roadside encounter that lasted less than one minute, Plaintiff

claims that Defendant Sergeant Robert Lancia ("Sgt. Lancia") directed a certain well-known

offensive gesture towards him—he brandished his middle finger. Asserting that Sgt. Lancia

caused him to "fear for [his] life," Plaintiff filed a civilian complaint the next day. Defs.' R. 56.1

Stmt., Ex. K.  Defendant Lieutenant Mark Emma ("Lt. Emma") investigated Plaintiff's grievance and concluded that Plaintiff had falsely accused Sgt. Lancia of misconduct.  Lt. Emma then initiated a misdemeanor case against Plaintiff for violating section 210.45 of the New York Penal Law by untruthfully affirming the content of his civilian complaint.  Plaintiff was convicted after a jury trial.  However, the court vacated the verdict on the grounds that the Ramapo P.D. civilian complaint form of the type that Van Dunk had filled out and signed lacked statutory authorization to bear a notice warning that false statements made therein may be subject to prosecution under section 210.45.  Defs.' R. 56.1 Stmt. ¶¶ 5-33.  Thus, even if false, sworn statements on the civilian complaint form fall outside the scope of section 210.45.

Plaintiff claims that Defendants initiated a baseless false swearing case against him in retaliation for his prolific filing of civilian complaints and First Amendment-protected speech criticizing the "institutionalized racism" of the Ramapo P.D.  The Amended Complaint includes the following counts:  a claim for First Amendment retaliation against Lt. Emma, under 42 U.S.C. §1983, based on his allegedly improper motivation to commence the false swearing case (Count One); a claim that Lt. Emma and Sgt. Lancia conspired to violate Plaintiff's civil rights, under 42 U.S.C. § 1985, based on their purported collusion in deciding to prosecute Plaintiff (Count Two); and a "failure to supervise"[1] claim against Ramapo P.D. Chief Peter Brower ("Chief Brower"), based on his alleged inaction regarding the Ramapo P.D.'s "harassment" and failure to investigate Plaintiff's civilian complaints (Count Three).[2]  Am. Compl., Doc. 10.

---

[1] The Court assumes that Plaintiff intends to bring a supervisory liability claim under 42 U.S.C. § 1983, although the Amended Complaint only states "pursuant to the statute" without providing a citation.  Am. Compl. ¶ 36.

[2] Notably, Plaintiff does not name the Town of Ramapo as a defendant, nor has he asserted any claims under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  Plaintiff previously—and unsuccessfully—sued the Town of Ramapo and Chief Brower in *Dunk v. Brower*, No. 07 Civ. 7087 (RPP), 2009 WL 650352 (S.D.N.Y. Mar. 12, 2009), based on similar conduct as that identified in the Amended Complaint—namely, retaliation based on Van Dunk's public criticism of the Ramapo P.D.  There, Judge Patterson dismissed Plaintiff's First Amendment

Before the Court is Defendants' Motion for Summary Judgment Dismissing the Complaint. Doc. 15. For the reasons set forth below, Defendants' Motion is GRANTED.

## I. Factual Background

The following facts are undisputed unless otherwise noted.[3]

---

retaliation claims against Chief Brower and *Monell* claims against the Town of Ramapo because Plaintiff failed to sufficiently allege critical elements. *Id.* at \*12-\*13.

[3] Plaintiff, as the party opposing summary judgment, was required to submit a response to Defendants' 56.1 Statement specifically responding to the assertion of each purported undisputed fact by the movant, and, if controverting any such fact, to support his position by citing to admissible evidence in the record. *See* Local Rule 56.1(b), (d); Fed. R. Civ. P. 56(c) (requiring reliance on admissible evidence in the record in supporting or controverting a purported material fact). My Individual Practices further require the party opposing a motion for summary judgment to reproduce each entry in the moving party's Rule 56.1 Statement and set out his response directly beneath it. *See* Individual Practices Rule 2(C)(i). These rules are designed to assist the Court by narrowing the scope of the issues to be adjudicated and identifying the facts relevant and admissible to that determination. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir. 2001) ("The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties."). In addition, My Individual Practices provide that, absent extraordinary circumstances, requests for extensions will be denied if not made *before* the expiration of the original deadline. *See* Individual Practices Rule 1(E).

Plaintiff's counsel failed to comply with these straightforward requirements: he filed procedurally deficient opposition papers nearly one month late, without first attempting to seek an extension from the Court. Docs. 21-25. The Court, *sua sponte*, ordered Plaintiff to show cause why his late-filed and procedurally defective submissions in opposition to Defendants' summary judgment motion should not be rejected. Doc. 26. Plaintiff responded to the Court's order in a letter dated May 20, 2013, but failed to provide a legitimate excuse for his untimeliness or procedural errors. Doc. 27. Thus, on May 24, 2013, the Court denied Plaintiff's request that the Court "overlook" the procedural deficiencies in his submissions. Doc. 28. "A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz*, 258 F.3d at 73 (citing *Wight v. Bankamerica Corp.*, 219 F.3d 79, 85 (2d Cir. 2000)); *see also Davidson v. Keenan*, 740 F.2d 129, 132 (2d Cir. 1984) (finding no abuse of discretion in district court's decision not to consider an untimely response; district court "surely was not required" to find "excusable neglect" for late filing where party failed to explain why they did not simply request an extension from the court).

Plaintiff responded to Defendants' Statement of Material Facts Pursuant to Local Rule 56.1 by submitting not one, but *three* procedurally deficient Rule 56.1 Statements and Counterstatements (Docs. 24, 25, and 29), the last of which was filed on May 25, 2013, without leave from the Court, and after the Court had explicitly ruled that it would not overlook the procedural problems plaguing Plaintiff's prior submissions (Doc. 29). The Court will not expend limited judicial resources scrutinizing each of Plaintiff's responses under the Local Rules of this District and the Federal Rules of Civil Procedure. It is sufficient to say that the responses wherein Plaintiff purports to deny one of Defendants' statements of material fact are improper in that they either do not actually controvert the facts set forth in Defendants' 56.1 Statement, or they purport to deny facts properly set forth by Defendants' 56.1 Statement without any citations to admissible evidence or with a citation to evidence that does not support Plaintiff's purported denial. Indeed, the only "evidence" offered by Plaintiff in support of his untimely Rule 56.1 Statements and Counterstatements is an affidavit from Plaintiff himself which (1) largely restates the allegations contained in the Amended Complaint, (2) does not contest the majority of facts presented by Defendants and (3) is of little value in light of his failure to supplement his conclusory assertions with documentary or other corroborating evidence. *See* Pl. Aff. Opp. S.J. Accordingly, all of the facts contained in Defendants' 56.1 Statement that are supported by citations to admissible evidence in the record are deemed admitted for purposes of this motion. Local R. 56.1(c);

3

### A. Plaintiff's Relationship with Defendants and the Ramapo P.D.

Plaintiff is a resident of Hillburn, New York, a village located wholly within the Town of Ramapo. Am. Compl. ¶ 1. Hillburn is home to a large community of the Ramapough Lunaape Nation, of which Plaintiff is a member. *Id.* ¶ 4. Defendants are three local police officers—Peter Brower, Chief of the Ramapo P.D.; Mark Emma, a Detective Lieutenant; and Robert Lancia, who held the rank of Sergeant during the timeframe relevant to this case.[4] *Id.* ¶ 2; Defs.' R. 56.1 Stmt. ¶¶ 1-4.

The parties are well acquainted. According to his deposition testimony, Plaintiff attended school with approximately forty percent of the Ramapo P.D.—including Sgt. Lancia—and has known all three Defendants for years. Am. Compl. ¶¶ 14-15; Defs.' R. 56.1 Stmt., Ex. H (Van Dunk Dep. 37:8 – 37:14, 106:18 – 106:21). Plaintiff also testified that Sgt. Lancia's brother-in-law bought his former home in a foreclosure action and renovated it for resale. Defs.' R. 56.1 Stmt., Ex. H (Van Dunk Dep. 57:12 – 58:24); Am. Compl. ¶ 15. Plaintiff claims that Sgt. Lancia used to treat him kindly, Defs.' R. 56.1 Stmt., Ex. H (Van Dunk Dep. 37:15 – 38:14), but their relationship soured after "the Mitchell incident," an episode in 2004 or 2005 during which Plaintiff struck non-party Ramapo P.D. Officer Mitchell, and as a result of which Plaintiff pleaded guilty to assault in the third degree. *Id.* (Van Dunk Dep. 38:15 – 39:10; 15:14 – 19:18). Plaintiff testified that, following his clash with Officer Mitchell, Sgt. Lancia "totally changed." *Id.* (Van Dunk Dep. 38:15 – 39:10).

---

*see also, e.g., Holtz*, 258 F.3d at 74 (explaining that where, as here, there are no citations to admissible evidence, or the cited materials do not support the purported undisputed facts in a party's Rule 56.1 statement, those assertions must be disregarded); *see also Costello v. N.Y. State Nurses Ass'n*, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (same).

[4] Sgt. Lancia has since been made a Lieutenant. Defs.' R. 56.1 Stmt. ¶ 3.

Plaintiff claims that the Ramapo P.D. unfairly targets him and his family—they aim to "bust balls of the Van Dunks" and "just fuck Rodney Van Dunk as much as [they] can." *Id.* (Van Dunk Dep. 33:19 – 34:10; 36:14 – 37:7, 39:4 – 39:10, 113:5 – 113:14). Plaintiff believes that five or six members of his family received "over 300 tickets" from the Ramapo P.D. within an unspecified four to five year timespan. *Id.* (Van Dunk Dep. 113:15 – 114:14).[5] When questioned about the basis of his belief about the Ramapo P.D.'s motives, Plaintiff testified that he had a source inside the Ramapo P.D. but would not name him. *Id.* (Van Dunk Dep. 34:3 – 35:19).

Plaintiff notes that while he takes issue with the Ramapo P.D., he is not "in general, anti-police," and avers that aside from a forgery charge initiated by his ex-wife, he has "never been accused of any crime that did not flow from an interaction with the Ramapo Police." Pl. Aff. Opp. S.J. Mot. ¶ 4, Doc. 21. Defendants, however, point out that Plaintiff admitted to having been arrested (but not convicted) by the Town of Clarkstown Police, City of Middletown Police and the Ramsey, New Jersey Police. Defs.' Reply Mem. of Law ("Defs.' Reply") at 2-3, Doc. 30; Defs.' R. 56.1 Stmt., Ex. H (Van Dunk Dep. at 8:6 – 8:25, 11:21 – 11:25, 13:1 – 13:20).

**B. Plaintiff's Activism and The 2006 Emil Mann Rally**

Plaintiff describes himself as a longtime "advocate against disparate treatment, especially by the police." Pl. Opp. at 2; Am. Compl. ¶ 5. His advocacy has included registering civilian complaints against the Ramapo P.D., creating and distributing "Ramapo Police are racists" t-shirts, and public speaking. Pl. Opp. at 2; Defs.' R. 56.1 Stmt., Ex. H (Van Dunk Dep. 95:7 – 96:24).

---

[5] Plaintiff also admitted pleading guilty to at least some of his traffic offenses, however. Defs.' R. 56.1 Stmt., Ex. H (Van Dunk Dep. 93:14 – 94:19).

As a basis for the allegation that Defendants harbored an impermissible motive to retaliate against him, Plaintiff emphasizes a speech that he gave in 2006, when the Ramapough Nation Lodge in Mahwah, New Jersey[6] hosted a public meeting in the aftermath of the alleged murder of Ramapough member Emil Mann by a New Jersey Park Police officer.  Pl. Opp. at 2, 5; Am. Compl. ¶ 35.  There, Plaintiff "made an impassioned statement about the harassment that many Ramapoughs are regularly subjected to by the Ramapo P.D."  Pl. Opp. at 3.  Chief Brower and non-party Chris St. Lawrence, the Ramapo Police Commissioner, attended the meeting, but Lt. Emma and Sgt. Lancia did not.  Am. Compl. ¶ 35.

With respect to civilian complaints, Plaintiff estimates that, over the past two decades, he has filed as many as thirty complaints against nineteen or more Ramapo P.D. Officers— including against the Defendants herein—based upon their allegedly discourteous demeanor, excessive ticketing and racially selective enforcement of the law.  Defs.' R. 56.1 Stmt., Ex. H (Van Dunk Dep. 24:6 – 24:8); Pl. Opp. at 2-3; Pl. Aff. Opp. S.J. Mot. ¶ 5.  Plaintiff seems particularly bothered by Sgt. Lancia, against whom he has filed six to seven civilian complaints, and who he claims has harassed him "like a mad man" for years and "was just out to get me, no matter what, me and my brothers."  Defs.' R. 56.1 Stmt., Ex. H (Van Dunk Dep. 36:14 – 37:7, 48:7 – 48:14).  Defendants assert that all of Plaintiff's complaints against the Ramapo P.D. have been deemed unfounded.  Defs.' R. 56.1 Stmt. ¶ 38.

### C. The November 13, 2009 Incident and Plaintiff's Complaint Against Sgt. Lancia

At approximately 9:10 p.m. on November 13, 2009, Sgt. Lancia and non-party Ramapo P.D. Officer Robert McIntosh ("Ofcr. McIntosh") conducted a traffic stop of Plaintiff's nephew.  Defs.' R. 56.1 Stmt. ¶¶ 5-6.  Plaintiff, who claims to have observed the traffic stop from afar,

---

[6] The Village of Hillburn is adjacent to the Stag Hill Ramapough community in Mahwah, New Jersey.

approached the immediate site of the traffic stop and, upon sighting his nephew, drove onto a

nearby shoulder of the road. *Id.* ¶¶ 8, 24. Sgt. Lancia instructed Plaintiff not to interfere with the

traffic stop and to move his vehicle away, for safety purposes. *Id.* ¶¶ 9-10. Plaintiff remained in

his vehicle for the duration of the encounter, which lasted less than a minute. *Id.* at Exs. F

(Emma Report), D (video file). Plaintiff asserts, and Defendants deny, that Sgt. Lancia "gave the

middle finger" to Plaintiff during their interaction. *Id.* ¶ 15.

The next day, November 14, 2009, Plaintiff went to Ramapo P.D. Headquarters and filled

out a civilian complaint form against Sgt. Lancia, which included the following narrative:

> I was going to Burger King last night on Route 17 … with my son Rodney. I saw
> the police on Route 17 stop somebody. As I got closer, it was my nephew. I
> slowed down and Sgt. Lancia started yelling ["]we don't need you here["] so I
> said ["]don't be mad because you lost [trial].["][7] And he said ["]all you do is
> lie["] then gave me the middle finger. He was on the side of his car so the camera
> couldn't pick it up. I think this guy is going to kill me. He [is] so upset … that he
> lost in court and I fear for my life. I'm going to the DA's Office and the Town
> Supervisor. I said nothing to him. He started with me and all Rob McIntosh and
> all he does is give my family tickets. RVD.

*Id.* ¶ 24, Ex. K (emphasis in original). At his deposition, Plaintiff elaborated on this account by

testifying that Sgt. Lancia "gave [him] the middle finger" by raising his hand and extending his

middle finger upward. *Id.* at Ex. H (Van Dunk Dep. 54:8 – 54:21).

On November 17, 2009, the Ramapo P.D. assigned Lt. Emma, Sgt. Lancia's supervisor,

to investigate Plaintiff's complaint. *Id.* ¶ 16, Ex. F (Emma Report). That day, Lt. Emma

interviewed Plaintiff and asked him whether the complaint form that he had filled out on

November 14, 2009 was accurate; Plaintiff stated that it was. *Id.* at Ex. F (Emma Report). The

Ramapo P.D. civilian complaint form completed by Plaintiff contained a form notice indicating

---

[7] This appears to be a reference to the Airmont Justice Court's acquittal of Plaintiff of a charge of "false
personation" that arose from a traffic stop conducted by Ofcr. McIntosh and Sgt. Lancia on April 14, 2009. Am.
Compl. ¶¶ 12-13; Pl. Aff. Opp. Mot. S.J. ¶¶ 9-11.

that "[f]alse statements made herein are punishable as a CLASS A misdemeanor pursuant to section 210.45 of the Penal Law."[8] *Id.* at Ex. K (Civilian Complaint). Lt. Emma directed Plaintiff to re-read his complaint, review the section 210.45 form notice on the bottom of the complaint form, and sign if desired; Plaintiff did so. *Id.* at Ex. F (Emma Report). Lt. Emma also signed the form under a line indicating that Plaintiff affirmed its content. *Id.*

In addition to interviewing Plaintiff, Lt. Emma obtained statements from Ofcr. McIntosh and Sgt. Lancia. *Id.* at Exs. F (Emma Report), G (Nov. 19, 2009 Lancia Memorandum). Ofcr. McIntosh informed Lt. Emma that he never saw Sgt. Lancia display his middle finger, nor did he hear Sgt. Lancia make threats during any portion of the November 13, 2009 traffic stop. *Id.* at Ex. F (Emma Report). Sgt. Lancia likewise denied making any obscene gestures and explained that he used his thumb and index fingers to instruct Plaintiff to move his vehicle away from the site of the traffic stop for safety purposes. *Id.* ¶¶ 9-11, Ex. G (Nov. 19, 2009 Lancia Memorandum). Sgt. Lancia described their conversation as follows: he told Plaintiff, "We don't need you here;" Plaintiff said, "you are just mad that I beat you in court;" and he replied, "That is because you lied in court." *Id.* Plaintiff then told Sgt. Lancia that his car was broken down, but as Sgt. Lancia reached for his radio to call a tow, Plaintiff drove off; this concluded their interaction. *Id.*

Finally, Lt. Emma reviewed a videotaped recording of the incident captured by Sgt. Lancia's patrol car video camera. *Id.* at Exs. D (video), F (Emma Report). Although it does not include audio for the dialogue between Sgt. Lancia and Plaintiff, the video—attached to

---

[8] Section 210.45 provides that:

> A person is guilty of making a punishable false written statement when he knowingly makes a false statement, which he does not believe to be true, in a written instrument bearing *a legally authorized form notice* to the effect that false statements made therein are punishable.

N.Y. Penal Law § 210.45 (McKinney's) (emphasis added).

Defendants' Rule 56.1 Statement as Exhibit D—depicts the entire approximately thirty-three second exchange. *Id.* at Ex. D (21:24:29 – 21:25:03). First, the tape shows Plaintiff's car pulling up to the scene and stopping ahead of the Ramapo P.D. patrol vehicle; while Plaintiff remains in his car, Sgt. Lancia steps out of his vehicle and gestures to Plaintiff using his thumb and his index finger. *Id.* (21:24:29 – 21:24:51). Sgt. Lancia stops walking and rests his hands by his hips while facing Plaintiff's car. *Id.* (21:24:52 – 21:24:55). Next, he appears to take something out of his pocket and turns to face another vehicle. *Id.* (21:24:56 – 21:25:02). Plaintiff drives away. *Id.* At no time does the video appear to depict Sgt. Lancia using his middle finger offensively or raising it up. *Id.* Plaintiff claims that the video is inconclusive because Sgt. Lancia's hands are not visible at all times. Pl.'s R. 56.1 Stmt. and Cntrstmt. ¶ 4, Doc. 24.

### D. The False Swearing Charge Against Plaintiff

Based on his investigation, Lt. Emma concluded that Plaintiff falsely accused Sgt. Lancia of misconduct. Defs.' R. 56.1 Stmt., Exs. C (Emma Aff. ¶¶ 12-13), F (Emma Report), Docs. 17, 18. Lt. Emma avers that he then read section 210.45 and consulted Rockland County Senior A.D.A. Richard Moran, who, upon hearing Lt. Emma's account of the facts, stated that he believed probable cause existed to charge Plaintiff with making a false punishable written statement under section 210.45.[9] *Id.* at Ex. C (Emma Aff. ¶¶ 11-12). Lt. Emma proceeded to file a misdemeanor information with the Village of Airmont Justice Court charging Plaintiff with making a false punishable written statement. *Id.* ¶ 30.

Plaintiff was convicted after a jury trial in July 2010. *Id.* ¶ 31. However, Plaintiff successfully moved to vacate the verdict on the grounds that the Ramapo P.D. complaint form

---

[9] A.D.A. Moran submitted an affidavit averring that he spoke to Lt. Emma on many occasions in 2009 and subsequently, and has no reason to doubt Lt. Emma's version of the facts, but cannot specifically recall discussing whether probable cause existed to arrest Plaintiff for making a false punishable written statement pursuant to section 201.45 of the Penal Law. Defs.' R. 56.1 Stmt., Ex. J (Moran Aff. ¶¶ 1-5).

was not legally authorized to include the warning that false statements made therein are subject to prosecution. *Id.* ¶ 32; Am. Compl. ¶¶ 23-24.

## II. Legal Standard Governing Motions for Summary Judgment

Summary judgment is only appropriate where the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Osberg v. Foot Locker, Inc.*, 907 F. Supp. 2d 527, 532 (S.D.N.Y. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex Corp.*, 477 U.S. at 322-23); *see also* Fed. R. Civ. P. 56(c)(1)(B). The burden then shifts to the non-moving party to come forward with admissible evidence sufficient to support each essential element of the claim, and "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted); *see also Cordiano*, 575 F.3d at 204.

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  A motion for summary judgment cannot be defeated on the basis of conclusory assertions, mere denials or unsupported alternative explanations of facts.  *Major League Baseball Props., Inc.*, 542 F.3d at 310 (collecting cases); *see also Senno*, 812 F. Supp. 2d at 467 (citing *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).  The non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts,'" *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), it "must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson*, 477 U.S. at 256-57).

"Summary judgment is properly granted when the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002) (quoting *Celotex Corp.*, 477 U.S. at 322).  In that situation, there can be no "genuine dispute as to any material fact," since a failure of proof on an essential element of the non-moving party's case "necessarily renders all other facts immaterial."  *Celotex Corp.*, 477 U.S. at 322-23.

With respect to summary judgment in discrimination cases, the Second Circuit has

provided the following additional guidance:

> We have sometimes noted that an extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions. *See, e.g., Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994). Nonetheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 135 (2d Cir. 1997); *see also Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

*Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir. 2006) (quoting *Holtz*, 258 F.3d at

69)); *see also Filippi v. Elmont Union Free Sch. Dist. Bd. of Educ.*, No. 09 Civ. 4675 (JFB)

(ARL), 2012 WL 4483046, at \*9 (E.D.N.Y. Sept. 27, 2012).

## III. First Amendment Retaliation Claim Pursuant to 42 U.S.C. § 1983 (Count One)

### A. Legal Standard

In order to state a claim under Section 1983, a plaintiff must allege that: (1) a right

secured by the Constitution or federal law was violated by defendants, and (2) the alleged

violation was committed by a person acting under color of state law. *See, e.g., Am. Mfrs. Mut.

Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). "Section 1983 is only a grant of a right of action;

the substantive right giving rise to the action must come from another source." *Singer v. Fulton

Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995). Thus, a civil rights action brought under § 1983

will stand only insofar as the plaintiff can prove an actual violation of his rights under the

Constitution or federal law. *Id.* (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)).

In the Second Circuit, the viability of a prima facie First Amendment retaliation claim

depends on the factual circumstances giving rise to the claim. *Zherka v. Amicone*, 634 F.3d 642,

643 (2d Cir. 2011); *see also Williams v. Town of Greenburgh*, 535 F.3d 71, 76 (2d Cir. 2008)

("We have described the elements of a First Amendment retaliation claim in several ways, depending on the factual context.") (citations omitted).  A private citizen alleging retaliation for his criticism of public officials generally must prove:  (1) he engaged in conduct or speech protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' retaliatory action effectively chilled the exercise of his First Amendment right.  *Carter v. City of New York*, 427 F. Supp. 2d 307, 325 (S.D.N.Y. 2004) (citing *Cardew v. New York State Dep't of Corr. Servs.*, No. 01 Civ. 3669, 2004 WL 943575, at *6 (S.D.N.Y. Apr. 30, 2004) (quoting *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001))).

The element of intent requires an assessment of what evidence, if any, demonstrates that Defendants' conduct "was motivated by or substantially caused by [Plaintiff's] exercise of free speech."  *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 371 (S.D.N.Y. 2011) (quoting *Gagliardi v. Village of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994)). "Specific proof of improper motivation is required in order for plaintiff to survive summary judgment on a First Amendment retaliation claim."  *Curley*, 268 F.3d at 73 (citing *Blue v. Koren*, 72 F.3d 1075, 1082-83 (2d Cir. 1995)).  Evidence of improper motive "may include expressions by the officials regarding their state of mind, circumstances suggesting in a substantial fashion that the plaintiff has been singled out, or the highly unusual nature of the actions taken."  *Blue*, 72 F.3d at 1083-84.  Second Circuit courts have declined to examine the officer's underlying motive "[i]f the officer had probable cause or arguable probable cause to arrest the plaintiff." *Singer*, 63 F.3d at 120; *see also Mozzochi v. Borden*, 959 F.2d 1174, 1179-80 (2d Cir. 1992). "[I]f a genuine issue of material fact exists on whether there was probable cause for the arrest, granting summary judgment on a First Amendment claim may be inappropriate."  *Anderson v.*

13

*City of New York*, 817 F. Supp. 2d 77, 96-97 (E.D.N.Y. 2011) (citing *Musso v. Hourigan*, 836 F.2d 736, 743-44 (2d Cir. 1988), *reconsideration denied*, No. 06 Civ. 5363 (KAM) (VVP), 2011 WL 5175600 (E.D.N.Y. Oct. 31, 2011)).  However, "a plaintiff may not rely on conclusory assertions of retaliatory motive to satisfy the causal link," and must produce "some tangible proof to demonstrate that [his] version of what occurred was not imaginary."  *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004) (citation omitted).  The mere existence of "a scintilla of evidence" in support of the nonmovant's position is insufficient; there must be evidence on which the jury could reasonably find for him.  *See Dawson v. Cnty. of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004) (citation omitted); *see also, e.g.*, *Perrin v. Hilton Int'l, Inc.*, 797 F. Supp. 296, 299-300 (S.D.N.Y. 1992) (where the court determines that a reasonable jury can reach only one conclusion, the issue of causation may be decided as a matter of law).

To prove the "actual chilling" element, it is not enough for the plaintiff to show that he changed his behavior in some way; he "must show that the defendant intended to, and did, prevent or deter [her] from exercising [her] rights under the First Amendment."  *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 221 (N.D.N.Y. 2012), *aff'd*, No. 12 Civ. 1811 (JSR), 2013 WL 1876610 (2d Cir. 2013).  However, in other private citizen cases, various forms of concrete harm have been substituted for the "actual chilling" requirement.  *Zherka*, 634 F.3d at 643, 645-46; *see also Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 239 (E.D.N.Y. 2009) (chilling element is required only "in cases where a plaintiff states no harm independent of the chilling of his speech").  Where a plaintiff has sufficiently alleged a concrete harm, and in the absence of a subjective chilling requirement, Second Circuit courts have only required a showing (1) that the First Amendment protected the plaintiff's conduct, and (2) that "defendants' conduct was

motivated by or substantially caused by [the plaintiff's] exercise of speech." *Hafez*, 894 F. Supp. 2d at 222 (citing *Gagliardi*, 18 F.3d at 194 (citation omitted)).

## B. Plaintiff Has Failed to Demonstrate the Existence of Retaliatory Animus

Plaintiff theorizes that Lt. Emma decided to file a baseless false swearing charge against him in 2009 as retaliation for:  (1) the "impassioned statement" that he made about the Ramapo P.D.'s racism in 2006 at the Emil Mann rally in Mahwah, New Jersey, "and/or" (2) his general and frequent condemnation of the Ramapo P.D.  Pl. Opp. at 5-6.  Plaintiff's interest in publicly criticizing the Ramapo P.D. and petitioning the government for redress of grievances is clearly protected by the First Amendment. *See, e.g.*, *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).  Likewise, "the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006).  As a matter of law, however, Plaintiff's First Amendment retaliation claim cannot survive summary judgment because he has failed to establish a causal connection between the protected speech in question and Lt. Emma's decision to initiate a criminal case against him. Defs.' Reply at 4-5.

### 1.  Plaintiff Has Failed to Adduce Evidence Causally Connecting His Speech at the 2006 Emil Mann Rally to Lt. Emma's Allegedly Retaliatory Actions

The Court finds that, to the extent it is based on retaliation for his 2006 speech at the Ramapough Lodge, Plaintiff's First Amendment retaliation claim is untenable. "To prove a causal connection, the plaintiff must demonstrate that the individuals who engaged in retaliation had knowledge of the protected conduct." *Deal v. Seneca Cnty.*, No. 07 Civ. 6497 (MAT), 2012 WL 13661 (W.D.N.Y. Jan. 4, 2012); *see also Washington v. Cnty. of Rockland*, 373 F.3d 310, 321 (2d Cir. 2004).  "Circumstantial evidence of retaliation may be found when defendants are aware that plaintiff has engaged in protected speech and defendants' challenged behavior closely

follows that protected speech." *Butler v. City of Batavia*, 545 F. Supp. 2d 289, 293 (W.D.N.Y. 2008) *aff'd*, 323 F. App'x 21 (2d Cir. 2009) (citing *Economic Opportunity Comm'n of Nassau Cnty., Inc. v. Cnty. of Nassau*, 106 F. Supp. 2d 433, 437 (E.D.N.Y. 2000)); *Gagliardi*, 18 F.3d at 195 ("[w]hile a bald and uncorroborated allegation of retaliation might prove inadequate to withstand a motion to dismiss, it is sufficient to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred.").

Here, Plaintiff fails to even allege a nexus between his speech at the 2006 Emil Mann rally and Lt. Emma or Sgt. Lancia's knowledge of that speech. The record is devoid of facts indicating that Lt. Emma or Sgt. Lancia knew of the rally prior to Lt. Emma's decision to initiate the false swearing case against Plaintiff. Indeed, Chief Brower is the only Defendant whom Plaintiff claims attended the rally, but Plaintiff has not contested Chief Brower's statement that he did not discuss the 2009 false swearing charge with Lt. Emma at that time. Defs.' Reply at 5; Defs.' R. 56.1 Stmt., Ex. E (Brower Aff. ¶ 4), Doc. 19. As such, Plaintiff has not offered "tangible proof" demonstrating that his speech at the Emil Mann rally animated Lt. Emma's decision to initiate a proceeding against him three years later; he solely relies on conclusory assertions of retaliatory motive. Moreover, even if Plaintiff could establish that Lt. Emma actually knew about the rally—and he has not attempted to do so—the three-year time lag between 2006 and Lt. Emma's purported retaliation at the end of 2009 is too attenuated to support an inference of causation. *See, e.g.*, *Morisseau v. DLA Piper*, 532 F. Supp. 2d 595, 617 (S.D.N.Y. 2008), *aff'd*, 355 F. App'x 487 (2d Cir. 2009) ("While the Second Circuit has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship, the weight of authority supports the view that ten or twelve months is too long." (quotation marks omitted) (collecting cases)). Accordingly,

Plaintiff's conclusory claim that he was targeted "most notably" because of his 2006 speech at the Ramapough Lodge (Pl. Opp. at 5) falls far short of creating a genuine issue of material fact and cannot withstand summary judgment.

Plaintiff's failure to adduce any admissible facts in support of his allegations is particularly remarkable in light of the fact that in 2007, Plaintiff brought similar claims before another judge in this district—alleging that Chief Brower and the Town of Ramapo retaliated against him based upon his speech at the Emil Mann rally, as well as his general accusations of racial discrimination against the Ramapo P.D.—but likewise presented exclusively speculative allegations. *Van Dunk v. Brower*, No. 07 Civ. 7087 (RPP), 2009 WL 650352 (S.D.N.Y. Mar. 12, 2009). As is the case here, Judge Patterson found that Plaintiff failed to "allege sufficient facts … supporting a causal connection between his public criticism in the Lodge and the [Ramapo P.D.'s] adverse actions … Plaintiff merely asserts a factual conclusion—the Defendants' actions were in retaliation to his public complaints." *Id.* at *12-*13.

### 2. Plaintiff Has Not Offered Any Direct or Circumstantial Evidence Linking His "General Advocacy" to Lt. Emma's Allegedly Retaliatory Actions

Plaintiff's argument that his general, anti-Ramapo P.D. advocacy caused Lt. Emma to initiate a criminal charge against him likewise fails because he has failed to offer any evidence of Lt. Emma's motive upon which a jury might conceivably find in his favor. Pl. Opp. at 2-3, 5-6. In the absence of retaliatory animus, courts have permitted First Amendment retaliation claims to survive summary judgment based on circumstantial evidence such as temporal proximity. *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) ("A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action."); *Barrington v. New York*, 806 F. Supp. 2d 730, 747 (S.D.N.Y. 2011); *Cronin v. St. Lawrence*, No. 08 Civ. 6346 (KMK), 2009 WL 2391861, at *11 (S.D.N.Y. Aug. 5, 2009).

Here, while the false swearing charge came soon after Plaintiff filed a civilian complaint against Sgt. Lancia, the speech upon which Plaintiff stakes his claims is emphatically *not* "that which he said during any Ramapo P.D. stop; nor does he claim that the contents of his complaint against Lancia was [sic] protected speech." Pl. Opp. at 5. Plaintiff insists, rather, that his general "frequent and outspoken criticism of the [Ramapo P.D.] … as opposed to particular words on specific occasions" inspired retaliatory action. *Id.* at 5-6. By Plaintiff's own admission, his anti-Ramapo P.D. advocacy has spanned multiple decades. Defs.' R. 56.1 Stmt., Ex. H (Van Dunk Dep. 24:6 – 24:16). Starting in 1988, Plaintiff filed numerous complaints against Ramapo P.D. officers—including Lt. Emma, Chief Brower, and six to seven additional complaints against Sgt. Lancia alone—both preceding and following the November 13, 2009 incident. *Id.* (48:7 – 48:14); Defs.' R. 56.1 Stmt. ¶¶ 36-37. While Sgt. Lancia had prior opportunities to retaliate against Plaintiff for filing civilian complaints, Plaintiff offers no explanation, much less evidence, to illuminate why Lt. Emma may have been motivated to bring a false swearing charge against him for filing the complaint against Sgt. Lancia in 2009.[10] Plaintiff has done little more than raise the question of "why now?" and has not offered a scintilla of evidence to suggest that Lt. Emma harbored a retaliatory motive.

In his affidavit, Lt. Emma avers that he decided to charge Plaintiff "not to retaliate for filing a civilian complaint, which he has filed numerous times before and since this incident," but for what he "believed to be a clear violation of the Penal Law," based on his investigation. Defs.' R. 56.1 Stmt., Ex. C (Emma Aff. ¶ 16). Furnishing only his own late-filed affirmation in support of his claim, Plaintiff asks this Court to create something from nothing—to "infer a level

---

[10] Moreover, Plaintiff concedes that "many people," including his own Van Dunk family members, filed civilian complaints against the Ramapo P.D. based upon officers' demeanor in the past, and "[t]hese complainants were never prosecuted"— which seems to contradict his theory that the Ramapo P.D. has it out for his family. Am. Compl. ¶ 25.

of annoyance as to Plaintiff" from Lt. Emma's affidavit, and thus permit the question of Lt.

Emma's potential animus against Plaintiff to proceed to a jury. Pl. Opp. at 5. The Court finds no

basis to do so. Ultimately, Plaintiff has "offered only conjecture" in support of his claim that Lt.

Emma arrested him in retaliation for speaking out against the Ramapo P.D. *Carter*, 427 F. Supp.

2d at 325-26; *Blue v. Koren*, 72 F.3d at 1085 (granting summary judgment where the plaintiff

provided no evidence of retaliatory motive); *cf. Beechwood Restorative Care Ctr. v. Leeds*, 436

F.3d 147, 154 (2d Cir. 2006) (denying summary judgment where non-party affidavits contained

direct evidence of retaliatory motive, from which a jury could reasonably find defendants

retaliated against the exercise of First Amendment rights); *Bartels v. Inc. Vill. of Lloyd*, 751 F.

Supp. 2d 387, 400 (E.D.N.Y. 2010) (denying summary judgment where the plaintiff presented

direct and circumstantial evidence of improper motive through statements from multiple non-

party witnesses and examples of specific conduct).

Due to the complete dearth of admissible evidence adduced by Plaintiff indicating that a

retaliatory motive played a substantial (or any) role in Lt. Emma's decision to charge him, the

Court GRANTS summary judgment to Defendants on his First Amendment Retaliation claim.

### C. In the Alternative, Lt. Emma Is Entitled to Qualified Immunity

Even if Plaintiff could create a genuine issue of material fact with respect to Lt. Emma's

allegedly retaliatory motive, the Court finds that qualified immunity would nonetheless shield Lt.

Emma from liability.[11]

---

[11] In the Second Circuit, it is well-established that "[i]f the officer either had probable cause or was qualifiedly immune from subsequent suit (due to an objectively reasonable belief that he had probable cause), then [the court] will not examine the officer's underlying motive in arresting and charging the plaintiff." *Singer*, 63 F.3d at 120 (citing *Mozzochi*, 959 F.2d at 1179-80 (probable cause); *Magnotti*, 918 F.2d at 368 (qualified immunity)); *see also Golodner v. City of New London*, 443 F. App'x 622, 624 (2d Cir. 2011) ("[T]he existence of probable cause is a complete defense to a claim of retaliatory arrest."). Indeed, the Second Circuit has held that probable cause may conceivably defeat a First Amendment retaliation claim even where the government may have initiated an arrest or prosecution for the purpose of silencing speech. *Mozzochi*, 959 F.2d at 1180 ("An individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause that is in reality an

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutorily or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "A government official sued in his individual capacity is entitled to qualified immunity (1) if the conduct attributed to him was not prohibited by federal law; or (2) where that conduct was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred; or (3) if the defendant's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken." *Manganiello v. City of New York*, 612 F.3d 149, 164 (2d Cir. 2010) (citations, brackets, ellipses, and quotation omitted).

The Supreme Court recently explained that, "[t]o be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, —— U.S. ——, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012) (internal quotation marks and brackets omitted). Although a case directly on point is not required, "existing precedent must have placed the statutory or constitutional question beyond debate." *Fabrikant v. French*, 691 F.3d 193, 213 (2d Cir. 2012) (citing *Ashcroft v. al-Kidd*, —— U.S. ——, 131 S.Ct. 2074, 2083, 179 L.Ed.2d 1149 (2011)). Moreover, "[e]ven if the right at issue was clearly established in certain respects ... an officer is still entitled to qualified immunity if 'officers of reasonable competence could disagree' on the legality of the action at issue in its particular factual context." *Walczyk v. Rio*, 496 F.3d 139, 154 (2d Cir. 2007) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *see also Hope v. Pelzer*, 536 U.S. 730, 739 (2002)

---

unsuccessful attempt to deter or silence criticism of the government."); *see also Reichle v. Howards*, —— U.S. ——, 132 S. Ct. 2088, 2093-94, 182 L. Ed. 2d 985 (2012) (noting that the Supreme Court has never recognized the existence of the "specific right to be free from a retaliatory arrest that is otherwise supported by probable cause," notwithstanding its recognition of "the general right to be free from retaliation for one's speech.").

("[Q]ualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful."). "Qualified immunity ... applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Sudler v. City of New York*, 689 F.3d 159, 174 (2d Cir. 2012) *cert. denied*, 133 S. Ct. 2777, 186 L. Ed. 2d 219 (2013) (internal quotation marks and citations omitted). "Qualified immunity thus affords government officials breathing room to make reasonable—even if sometimes mistaken—decisions, and protects all but the plainly incompetent or those who knowingly violate the law from liability for damages." *DiStiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) (internal citations and quotation marks omitted).

Plaintiff alleges that Lt. Emma lacked probable cause to initiate false swearing charges against him. Am. Compl. ¶ 26. Probable cause for a police officer to make an arrest exists when that officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer*, 63 F.2d at 119 (citation and quotations omitted); *see also, e.g., Finigan v. Marshall*, 574 F.3d 57, 62 (2d Cir. 2009); *Zellner v. Summerlin*, 494 F.3d 344, 368-69 (2d Cir. 2007). The inquiry is whether the facts known to the officer at the time of the arrest *objectively* established probable cause for the arrest. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

Even if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can demonstrate that "arguable probable cause" supported the arrest. *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). Arguable probable cause exists "if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Golino v. City of New Haven*, 950 F.2d

864, 870 (2d Cir. 1991); *see also Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002)

("[W]here an officer may have reasonably but mistakenly concluded that probable cause existed,

the officer is nonetheless entitled to qualified immunity." (citations omitted)); *Cerrone v. Brown*,

246 F.3d 194, 203 (2d Cir. 2001) ("Arguable probable cause exists when a reasonable police

officer in the same circumstances and possessing the same knowledge as the officer in question

*could* have reasonably believed that probable cause existed in the light of well-established law."

(citation and internal quotation marks omitted)).

Here, the relevant question is whether a reasonable officer could have believed Lt.

Emma's decision to charge Plaintiff with false swearing to be lawful, in light of clearly

established law and the information that Lt. Emma possessed.  Based on his investigation—

including video footage of the incident—Lt. Emma concluded that Sgt. Lancia did not give

Plaintiff the middle finger, and thus that Plaintiff had lodged a false accusation on a form bearing

a notice that false statements made therein could be subject to prosecution under section 210.45.

The text of section 210.45 prohibits a person from "mak[ing] a false statement, which he

does not believe to be true, in a written instrument bearing *a legally authorized form notice* to

the effect that false statements made therein are punishable.  N.Y. Penal Law § 210.45

(McKinney's) (emphasis added).  New York case law interpreting section 210.45 establishes that

only falsehoods affirmed on certain statutorily authorized documents can be subject to

prosecution.  Plaintiff claims that the scope of section 210.45 was settled at the time of Lt.

Emma's investigation, and thus Lt. Emma should have known that only forms specifically

authorized to bear the legend of section 210.45 can form the basis of a false swearing charge.[12]

---

[12] Defendants do not appear to dispute that the civilian complaint form at issue is *not* a document authorized by statute to be subject to section 210.45.  *See* Defs.' R. 56.1 Stmt. ¶¶ 32, 33.

In *People v. Guido*, the Appellate Division held that the defendant could not be convicted of false swearing under section 210.45 where there was no statute authorizing use of the form notice on the Ramapo Department of Solid Waste form that he signed.  Pl. Opp. at 6-7; *People v. Guido*, 114 Misc. 2d 470, 454 N.Y.S.2d 171, 172 (App. Term 1982); *see also People v. Bromley*, 85 Misc. 2d 988, 381 N.Y.S.2d 965 (Nassau Cnty. Ct. 1976) (holding that section 210.45 is only applicable to documents submitted to governmental agencies which would otherwise require oaths before notaries).  Subsequent to *Guido*, the New York Court of Appeals decided *People v. Sullivan*, which held that an application for a search warrant based on a supporting statement bearing the form notice of section 210.45 adequately safeguards against perjury because "a statement containing such a warning is practically as well as theoretically, no different than a statement under oath."  56 N.Y.2d 378, 383-84, 437 N.E.2d 1130, 1133-34 (1982).  Defendants argue that, as indicated by the McKinney's Practice Commentary, which uses a "but see" signal to introduce *Sullivan*, there is a "contrast or conflict" in authority between the Appellate Division's holding in *People v. Guido* and *People v. Bromley* as compared with the Court of Appeals' holding in *People v. Sullivan*, even though *Sullivan* did not directly address the issue of prosecution for violation of section 210.45.

The Court finds that a reasonable officer might fairly interpret the Penal Law to authorize a charge for false swearing of a civilian complaint without first checking to see if a specific statute authorized inclusion of the section 210.45 notice on that particular form.  It is not "sufficiently clear that every reasonable official would have understood" that charging a person for violating section 210.45 of the Penal Law, based upon sworn statements made in a civilian complaint form, violates a clearly established right.  *Fabrikant*, 691 F.3d at 212-13 (citing *Reichle*, 132 S.Ct. at 2093 (internal quotation marks and brackets omitted)).

Qualified immunity for Lt. Emma is warranted particularly because a reasonable officer could deem Lt. Emma's actions to be lawful based upon the facts available to him at the time. First, General Order 202, the internal Ramapo P.D. directive that governs the investigation and processing of civilian complaints against police officers, explicitly—albeit erroneously—states that the Ramapo P.D.'s civilian complaint form may be the basis for a criminal charge under section 210.45: "[i]ndividuals filing complaints determined to be False Accusations may be subject to criminal charges for violation of New York State Penal Law Section 210.45." Pl.'s R. 56.1 Stmt., Ex. 1 (G.O. 202 at 7, section 202.6.C), Doc. 25 (emphasis in original). General Order 202 plainly encourages officers to obtain sworn statements from complainants on the Ramapo P.D. civilian complaint form because, "*[w]hile encouraging the filing of legitimate complaints against officers/civilian employees as a means by which they can be held accountable to the public, the department simultaneously seeks to hold members of the public responsible for filing of false and malicious allegations against police officers or police civilian employees.*" Defs.' Reply at 5 (citing G.O. 202 (emphasis in original)). The fact that Lt. Emma acted in accordance with his own department's policy supports a conclusion that, to the extent he committed a mistake of law, his mistake was reasonable. *Wu v. City of New York*, 934 F. Supp. 581, 590-91 (S.D.N.Y. 1996) (granting qualified immunity where officer lacked probable cause for arrest, but could not be deemed an objectively unreasonable actor because he acted in accordance with a police department policy—albeit a constitutionally invalid one—and reasonably relied on witness statements); *Sudler*, 689 F.3d at 174 (qualified immunity protects officers who commit reasonable mistakes of law or fact). Moreover, a survey of case law indicates that other police departments appear to use (or have used) the language of section 210.45 on their civilian complaint forms. *See Jackler v. Byrne*, 658 F.3d 225, 230 (2d Cir.

2011), *cert denied*, 132 S. Ct. 1634, 182 L. Ed. 2d 233 (2012) (describing Middletown Police

Department Complaint Form as containing the penultimate sentence: "False statements made in

the foregoing complaint are punishable as a Class A misdemeanor pursuant to Section 210.45 of

the Penal Law."). The fact that the video footage of the incident, Defs.' R. 56.1 Stmt., Ex. D,

does not appear to show Sgt. Lancia offensively gesturing to Plaintiff lends further support for a

conclusion that officers of reasonable competence, in possession of the same facts as Lt. Emma,

could have likewise found probable cause to arrest Plaintiff or at the very least, disagreed.

*Curley*, 268 F.3d at 70 (probable cause does not require the arresting officer to completely

disprove the plaintiff's version of events, nor "believe with certainty that the arrestee will be

successfully prosecuted."); *see also Caldarola*, 298 F.3d at 162.

 Accordingly, the Court finds that Lt. Emma is entitled to qualified immunity.

## IV. Conspiracy Claim Pursuant to 42 U.S.C. § 1985 (Count Two)

 Plaintiff has alleged that Sgt. Lancia and Lt. Emma conspired to prosecute him, in

violation of 42 U.S.C. § 1985. To state a valid cause of action under § 1985(3),[13] a plaintiff must

allege: (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of the

equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt

act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a

deprivation of a right or privilege of a citizen of the United States." *Traggis v. St. Barbara's*

---

[13] Section 1985 provides, in relevant part, that:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). Although Plaintiff does not indicate in his Complaint that he has alleged a violation pursuant to subsection (3), it is the only portion of this statute that is conceivably applicable to the facts of this case.

*Greek Orthodox Church*, 851 F.2d 584, 586-87 (2d Cir. 1988) (citing *Griffin v. Breckenridge,*

403 U.S. 88, 103 (1971)); *Whitehurst v. 230 Fifth, Inc.*, No. 11 Civ. 0767 (CM), 2011 WL

3163495, at *5 (S.D.N.Y. July 26, 2011).  No explicit agreement need be proven; rather, a

plaintiff can establish a conspiracy by demonstrating a tacit understanding to carry out the

prohibited conduct at issue.  *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 792 (2d Cir.

2007) (citation omitted)).  Furthermore, in order to prove liability pursuant to § 1985(3), the

conspirators must be motivated by some racial or otherwise class-based, invidiously

discriminatory animus.  *Griffin,* 403 U.S. at 102; *Britt v. Garcia*, 457 F.3d 264, 274 (2d Cir.

2006) (quoting *Thomas v. Roach*, 165 F.3d 137, 146 (2d. Cir. 1999)).

　　　First, because he only alleges that Ramapo P.D. Officers conspired with one another,

Plaintiff's claim fails due to the "legal impossibility of pleading conspiracy by exclusive

reference to actions of employees of a single corporation." *Farbstein v. Hicksville Pub. Library*,

254 F. App'x 50, 51 (2d Cir. 2007) (citing *Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir.

1978)); *see also Hartline v. Gallo*, 546 F.3d 95, 99 n. 3 (2d Cir. 2008) (affirming the dismissal of

a section 1985 conspiracy claim where defendants were all Southampton Police Department

employees).  While an exception to the intracorporate conspiracy doctrine exists where co-

conspirators purportedly act based on personal motives wholly distinct from the interests of their

organization, the exception does not apply where, as here, the alleged co-conspirators acted

while on duty and within the scope of their employ.  *K.D. ex rel. Duncan v. White Plains Sch.

Dist.*, 921 F. Supp. 2d 197, 210 (S.D.N.Y. 2013); *see also Chillemi v. Town of Southampton*, No.

12 Civ. 3370 (ADS) (ETB), 2013 WL 1876443, at *12 (E.D.N.Y. May 4, 2013) ("For the

exception to apply, '[t]he [P]laintiff must ... allege that [the Defendants] acted other than in the

normal course of their corporate duties.'" (citation omitted)).  Even if Sgt. Lancia and Lt. Emma

allegedly harbored personal biases against Plaintiff, such biases do not constitute personal interests sufficient to defeat the intracorporate conspiracy doctrine. *Bond v. Board. of Educ. of City of New York*, 1999 WL 151702, at *2 (E.D.N.Y. Mar.17, 1999). On that basis alone, the grant of summary judgment to Defendants is appropriate on the facts of this case.

Plaintiff also fails to set forth specific facts in support of his claim that any Defendant engaged in a conspiracy. Although alleging an explicit agreement is not required, Plaintiff does not allege facts that would support the inference that there was a tacit understanding to carry out the prohibited conduct. *United States v. Rubin*, 844 F.2d 979, 984 (2d Cir. 1988). Plaintiff merely alleges that "Lancia and Emma … initiated a criminal prosecution against Plaintiff for false swearing … based on his execution of the Ramapo P.D. Standard Civilian Complaint form." Am. Compl. ¶ 21. This allegation, without more, lacks a "factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (internal citations and quotation marks omitted). Moreover, Plaintiff *admits* that Sgt. Lancia "did not participate [in], cause or encourage the filing of charges against Plaintiff," and thus he cannot prove a meeting of the minds. Pl.'s R. 56.1 Stmt. ¶ 43, Doc. 29; *see also* Defs.' R. 56.1 Stmt., Ex. C (Emma Aff. ¶ 14), Ex. I (Lancia Aff. ¶ 5), Doc. 20. Plaintiff's threadbare allegations of conspiracy—that "on information and belief Defendants Emma and Lancia conspired to prosecute Planitiff" (Am. Compl. ¶ 30)—are entirely conclusory and, due to the absence of any supporting facts or evidence, cannot survive summary judgment. *Temple of the Lost Sheep, Inc. v. Abrams*, 930 F.2d 178, 185 (2d Cir. 1991), *cert. denied,* 502 U.S. 866 (1991) (setting forth a § 1985 claim that is "couched in terms of conclusory allegations" will not pass muster). Thus, Plaintiff's § 1985 conspiracy claim must be dismissed.

Finally, Section 1985(3) "provides no substantive rights itself but merely 'provides a remedy for violation of the rights it designates,'" *Homefront Org., Inc. v. Motz*, 570 F. Supp. 2d 398, 410 n.9 (E.D.N.Y. 2008) (quoting *Spencer v. Casavilla*, 903 F.2d 171, 174 (2d Cir. 1990)), and "requires [a] plaintiff to establish that defendants sought to deprive [him] of a right covered by the Constitution or other laws." *Rosendale v. Iuliano*, 63 F. App'x. 52, 52 (2d Cir. 2003) (internal citation and quotation marks omitted). Here, Plaintiff's conspiracy claims are premised upon the same actions that, for the reasons discussed in Section III, *supra*, fail to establish that any constitutional violations have occurred.

Accordingly, the Court GRANTS summary judgment to Defendants Sgt. Lancia and Lt. Emma with respect to Count Two of the Amended Complaint.[14]

## V. Plaintiff's Failure to Supervise Claim (Count Three)

Count Three of Plaintiff's Amended Complaint pertains solely to Chief Brower. Am. Compl. ¶¶ 34-36. Plaintiff asserts that Chief Brower received "repeated notice" of the Ramapo P.D.'s pattern and practice of racial harassment of Lunaape Ramapough men—particularly, from Plaintiff himself at the Ramapough Nation Lodge meeting in 2006—and that Chief Brower did not attempt to limit the Ramapo P.D.'s harassment of Plaintiff, investigate his civilian complaints against members of the Ramapo P.D., or train Ramapo P.D. officers to respect constitutional civil rights. *Id.* ¶ 36.

Plaintiff has failed to establish a claim against Chief Brower in multiple significant respects. A supervisor cannot be held liable under 42 U.S.C. § 1983 for "his failure to act on

---

[14] To the extent that Counts One and Two also contain allegations related to violations of the Fourteenth Amendment (Am. Compl. ¶¶ 29, 31), the Court finds that Plaintiff has failed to adequately allege an equal protection, selective enforcement, substantive or procedural due process claim and therefore such claims are also dismissed. Aside from his own conjecture, Plaintiff has presented no evidence that Defendants treated him selectively as compared to similarly situated ordinary people. Neither party addressed this issue in the briefing.

28

information indicating unconstitutional acts were occurring or for his gross negligence in failing

to supervise his subordinates who commit such wrongful acts" unless the plaintiff demonstrates

an affirmative link between a constitutional violation and the supervisor's personal participation,

exercise of control, or inaction. *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002); *Miyares v.

City of New York*, No. 11 Civ. 4297 (RJS), 2013 WL 3940816, *3 (S.D.N.Y. July 31, 2013)

(citing *Smith v. Tobon,* 2013 WL 3368885, *2 (2d Cir. July 8, 2013)); *Brown v. City of New

York*, No. 11 Civ. 1068 (AJN), 2013 WL 491926, at *3 (S.D.N.Y. Feb. 8, 2013); *see also

Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001) ("It is well settled in this Circuit

that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to

an award of damages under § 1983." (citation and quotation marks omitted)).

Based on the available, admissible evidence viewed in the light most favorable to

Plaintiff, no reasonable jury could conclude that Chief Brower personally participated in any of

the alleged misconduct arising from the November 13, 2009 incident or Plaintiff's other civilian

complaints.[15]  Plaintiff's claim that in 2006, Chief Brower heard him complain at the

Ramapough Lodge, in a general fashion, regarding a pattern and practice of racism by the

Ramapo P.D. does not merit a conclusion that Chief Brower participated in, or had awareness of,

---

[15] Plaintiff's theory parallels that rejected by the court in *Richardson v. Department of Correction*, where the plaintiff unsuccessfully attempted to impose section 1983 liability on a supervisor who allegedly received, and ignored, a letter of protest from the plaintiff. *Richardson v. Dep't of Correction*, No. 10 Civ. 6137 (SAS), 2011 WL 710617, *3 (S.D.N.Y. Feb. 28, 2011). Here, as in *Richardson*, a supervisory official's failure to respond to a complaint does not constitute the personal involvement necessary to maintain a section 1983 claim because, "if mere receipt of a letter or similar complaint were enough, without more, to constitute personal involvement, it would result in liability merely for being a supervisor, which is contrary to the black-letter law that [section] 1983 does not impose *respondeat superior* liability." *Id.* (citation omitted); *see also, e.g., Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2003) ("[I]t is well established that an allegation that an official ignored a prisoner's letter of protest [ ... ] is insufficient to hold that official liable [under section 1983] for the alleged violations."); *Garrido v. Coughlin*, 716 F. Supp. 98, 100 (S.D.N.Y.1989) (dismissing complaint against the Commissioner of the Department of Correction where his only alleged connection to the case was that "he ignored [plaintiff's] letter of protest and request for an investigation of the allegations in [the] action") (cited in Defs.' Opp. at 14).

the arrest and prosecution initiated by Lt. Emma in 2009. Am. Compl. ¶ 35. Plaintiff has not

contested Chief Brower's averment that Lt. Emma did not discuss the 2009 false swearing

charge against Plaintiff with him at that time, Defs.' Opp. Ex. E (Brower Aff.), admitted that

Chief Brower "did not participate in, direct, or encourage the investigation, arrest, or prosecution

of Plaintiff," Pl.'s R. 56.1 Stmt. and Cntrstmt. ¶ 42, Doc. 29, and conceded that he never talked

to Chief Brower specifically about the November 13, 2009 incident. Defs.' R. 56.1 Stmt., Ex. H

(Van Dunk Dep. 101:19 – 101:24). Plaintiff has similarly failed to offer any admissible evidence

suggesting that Chief Brower created an unconstitutional policy or custom, was grossly negligent

in his supervision of subordinates, or exhibited deliberate indifference by failing to act on

information indicating that unconstitutional acts were occurring, and thus has no viable

supervisory liability claim. Accordingly, dismissal of Count Three is warranted. *Johnson v.*

*Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001) (citing *Colon v. Coughlin*, 58

F.3d 865, 873 (2d Cir. 1995)).

Plaintiff has also failed to adduce sufficient evidence that a constitutional violation

occurred. Plaintiff claims, "on information and belief," that Chief Brower did not heed or

document civilian complaints as required by Ramapo P.D. General Order No. 202 (Am. Compl.

¶ 11; Pl.'s R. 56.1 Stmt. ¶ 7, at 2-3, Doc. 24), yet Defendants correctly point out that an alleged

failure with respect to an *internal* police department rule does not amount to a violation of

constitutional rights unless the violation of the internal rule is a constitutional violation itself.

Defs.' Mem. Supp. S.J. at 12-13 (citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984)); *see also*

*Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979) (section 1983 only provides

a remedy when the plaintiff shows a violation of a *federally* protected right). While Plaintiff has

a clear First Amendment interest in petitioning the government for redress of his grievances,

*Gagliardi*, 18 F.3d at 194 ("[t]he rights to complain to public officials and to seek administrative and judicial relief are protected by the First Amendment"), Plaintiff provides no admissible evidence to support his mere conjecture that Chief Brower failed to comply with either internal or constitutional rules.

The Court therefore GRANTS summary judgment in Chief Brower's favor.

## VI. Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment is GRANTED.[16] The Clerk of the Court is respectfully directed to terminate this motion, Doc. 15, and close the case.


It is SO ORDERED.


Dated:   November 7, 2013
         New York, New York

                                        _____
                                        Edgardo Ramos, U.S.D.J.

---

[16] Since Plaintiff has failed to offer any admissible evidence showing that Chief Brower or Sgt. Lancia violated his constitutional rights, the Court need not address their qualified immunity defense. *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006).